STATE EX REL. TRAVELERS' INSURANCE COMPANY,
RELATOR, *v.* ROTWITT, SECRETARY OF STATE,
RESPONDENT.

[Submitted March 25, 1896.  Decided March 30, 1896.]

CORPORATIONS—*Legal organization—Secretary of state.*—Under the provisions of the Civil Code relating to the organization of domestic corporations (§ 390 *et seq.*), the issuance by the secretary of state of a certificate that a certified copy of the articles of incorporation of a company, organized thereunder, containing the required statement of facts, has been filed in his office, is a prerequisite to the legal formation of a domestic corporation.

SAME—*Foreign insurance company—Fees of secretary of state.*—A foreign accident and life insurance company, wishing to do business within this state, is regulated by the provisions of sections 1030 *et seq.* of the Civil Code, requiring the filing with the secretary of state of a duly authenticated copy of its charter, together with a statement of its financial condition, and a certificate of consent to be sued, and is not within the requirement of subdivision 3, section 410 of the Political Code, that the secretary of state charge and collect for receiving and filing each certificate of incorporation the sum of fifty cents on each one thousand dollars of the capital stock of the company, since the certificate of incorporation referred to in this section pertains only to the certificate necessary to complete the legal organization of a domestic corporation. (*State ex rel. Aachen* v. *Munich Fire Insurance Co.,* 17 Mont. 41, cited.)

ORIGINAL PROCEEDING. Application for writ of *mandamus* to compel the secretary of state to file a copy of relator's charter and other papers required by law to be filed by foreign corporations. Writ granted.

Statement of the case by the justice delivering the opinion.

The plaintiff, the Travelers' Insurance Company, is an insurance corporation, organized and existing by special act of the general assembly of the state of Connecticut. The petition alleges that, before doing any business or making any contracts in the state of Montana, the petitioner appointed an agent and attorney in the county of Lewis and Clarke, state of Montana, upon whom service of process against it could be made, and filed in the office and with the state auditor a written instrument, signed by its president and secretary, authorizing such agent and attorney to acknowledge service of process, as is generally required by law; and also filed with the state auditor a certified copy of its charter, together with

a verified statement of the place of petitioner's location, the amount of its capital stock, and a detailed statement of the facts and items as required by section 583, Division 5 of the Compiled Statutes, and with the provisions of sections 669, 670, Chapter 1, Title IV of Part IV of Division 1, of the Civil Code of Montana (1895).

It is further alleged that, at the time of the filing of said certificate, charter and statement, the auditor of the state issued his certificate to the petitioner that it had complied with all the requirements of said chapter 29 (this section is above referred to) of the Fifth Division of the Compiled Statutes of Montana, and was entitled to do business in the state of Montana; that the petitioner had annually filed with the state auditor a statement, as required by chapter 29, hereinbefore referred to and by Chapter 1 of Title IV of Part IV, also hereinbefore referred to. It is next averred that the petitioner, for the purpose of complying with the provisions of Title XI of Part IV of Division 1 of the Civil Code (1895), entitled "Foreign Corporations," did, on the 20th day of March, 1895, present to the defendant, as secretary of state, a duly authenticated copy of its charter, and the amendments thereto; also, a statement, verified by the oath of the president and secretary, and attested by a majority of the directors, showing the name of the petitioner, the location of its principal office or place of business without this state, and the location of its principal office or place of business within this state, the amount of its capital stock, the amount of its capital stock actually paid in in money, the amount of its assets, and of what they consist, with the actual cash value thereof, and the amount of its liabilities, whether secured or not, and a certificate appointing an agent for the petitioner in Montana upon whom service of process might be made, together with the consent of such agent to act; that the petitioner demanded that said charter, statement, certificate and consent be filed in the office of the secretary of state, and tendered to the said defendant, the secretary of state, the fee for such filing, to wit, 25 cents for filing said charter, 25 cents for filing said state-

ment, and $5 for filing said certificate and consent; but that
defendant wrongfully refused to accept or file said charter,
statement, certificate and consent, and refused the tendered
fee therefor, but demanded a fee of $500 for filing said charter,
and notified the petitioner that he would not file the said
charter and other papers except upon payment of said sum of
$500.

After alleging that the petitioner has no plain, adequate or
speedy remedy at law, the petitioner closes with a prayer for
an alternative writ of mandate, commanding the secretary of
state to receive and file the papers enumerated upon payment
of fees tendered, or show cause why he has not done so.    An
alternative writ was issued as prayed for.    The respondent, as
secretary of state, moved to quash the petition and writ for
the reason that the same did not contain facts sufficient to war-
rant the relief prayed for.

*McConnell, Gunn & McConnell* and *John B. Clayberg,* for
Relator.

*Henri J. Haskell,* Attorney General, and *Ella K. Haskell,*
for Respondent.

Hunt, J.—The question raised by this proceeding is this :
Is a foreign accident and life insurance company required to
pay to the secretary of state the fees provided for in subdi-
vision 3, § 410, Pol. Code 1895, which provides that the sec-
retary must charge and collect for receiving and filing each
certificate of incorporation the sum of 50 cents on each $1,000
of the capital stock of any company or corporation:    *    *    *
Provided, that no additional fee shall be charged for filing and
recording articles of incorporation.

Chapter 1, part IV, article I, of the Civil Code of 1895,
pertaining to the organization of corporations under the laws
of the state, after defining for what purposes corporations
may be organized, provides, by section 402, that the instru-
ment by which a private corporation is formed is called "Arti-
cles of Incorporation."    Provision is next made for what the

articles must set forth, how they must be subscribed, and that, "upon filing and recording the articles of incorporation, in the office of the county clerk of the county in which the principal business of the company is to be transacted, and a copy thereof, certified by the county clerk, with the secretary of state, the secretary must issue to the corporation, over the great seal of the state, a certificate that a copy of the articles, containing the required statement of facts has been filed in his office; and thereupon the persons signing the articles, and their associates and successors, shall be a body politic and corporate. * * *" The life of a corporation dates from its organization. The statute points out the manner in which corporations may be organized. When this statute is complied with, the corporation is then brought into existence. The statute is plain. Upon compliance with its certain specific provisions (that is, filing and recording), the secretary must issue a certificate that a copy of the articles containing the required statement of facts has been filed; and thereupon (that is, after filing and recording, and upon the issuance of the secretary of state's certificate that a certified copy of the articles of incorporation containing the required statement of facts has been filed), the persons signing the articles shall be a body politic and corporate. The certificate of the secretary to these facts, therefore, becomes a prerequisite to the legal formation of a corporation. (Morawetz on Private Corporations, § 27; *Walker* v. *Thompson*, 61 Me. 347; *Stowe* v. *Flagg*, 72 Ill. 397.)

For issuing this "certificate of incorporation" a specific fee of $3 is provided, and for "filing and receiving" each certificate of incorporation the secretary of state shall charge 50 cents on each $1,000 of the capital stock of any company or corporation; provided, that no additional fee shall be charged for filing and recording articles of incorporation.

This section refers to any corporation completely organized only by virtue of the issuance of the secretary's certificate, and not to corporations already organized and only asking a legal right to do business within the state. Foreign corporations organized under the laws of other states or countries, unless other-

wise regulated by law, are required to file in the office of the secretary of state duly authenticated copies of their charter or articles of incorporation, and a statement, as required by section 1030 *et seq.* (Civil Code, 1895.) This was decided in *State ex rel. Aachen & Munich Fire Insurance Co.* v. *Rotwitt,* 17 Mont. 41. The petitioner at bar concedes that it must comply with this requirement. And this is all we think it is obliged to do.

The certificate referred to in subdivision 3, of section 410, pertains to the incorporation of companies just being brought into existence. It is a certificate that a domestic corporation has been formed. Foreign corporations are already organized. Their legal organization as a fact is recognized expressly by section 1030, which regulates "foreign corporations," "organized" and wishing to do business in this state. Matters relating to the formation of such companies are controlled by the law in force at the places of their organization. Section 1030 of the Civil Code does not require a foreign corporation to file or record with the secretary of state a certificate of incorporation, or that it shall record any paper. It is simply obliged to file as evidence of the fact of a corporate existence elsewhere, and as a condition precedent to the right to business within the state, a duly-authenticated "copy of its charter or articles of incorporation," and a statement of its financial condition, as provided for by the first portion of section 1030 *et seq.* of the Civil Code, as heretofore interpreted by the court. As a certificate designating an agent to receive process is tendered in the case at bar, with a fee of $5 or filing the same, the question of necessity of an insurance corporation filing such certificate at all is not before us. (*State*. *Rotwitt, supra.*)

It would be a strained construction of the statute to hold that his foreign corporation, which only files a duly-authenticated copy of its charter, is included within the phrase "articles of incorporation" as used in section 410, subd. 3; and to require a foreign corporation, asking the privilege of doing business in the state, to go through the forms prescribed for the formation

of new corporations is against the letter of the law, and the spirit, too, we think.

The language of the various sections of the Code demonstrates that the legislative intent was not to impose severe exactions by way of fees upon solvent foreign corporations wishing to do business within the state, but to restrain the organization of corporations within the state, perhaps worthless in fact, but of apparently stupendous capital. Gathering this intent from the several expressions by way of statute, the petitioner is entitled to the relief asked.   Let the writ issue as prayed for.

PEMBERTON, C. J., and DE WITT, J., concur.