1998 OK 85

Twyla GRAY, Candidate for District Court Judge, Seventh Judicial District, Office 2, Petitioner,

v.

STATE of Oklahoma ex rel. STATE ELECTION BOARD, Glo Henley, Chair; Kenneth Monroe, Vice–Chair, Respondents.

No. 91600.

Supreme Court of Oklahoma.

July 28, 1998.

As Corrected Sept. 25, 1998.

Kenneth R. Nance, Barry W. Nance, Twyla Gray, Oklahoma City, for Petitioner.

W.A. Drew Edmondson, Attorney General of Oklahoma, Victor N. Bird, Chief Deputy Attorney General, Oklahoma City, for Respondents.

Larry Monard, Oklahoma City, Real Party in Interest.

Kent F. Frates, Maria T. Kolar, Hartzog, Conger & Cason, Oklahoma City, for Real Party in Interest, James B. Blevins.

HODGES, Justice.

¶ 1 Twyla Gray (Petitioner) is a former Municipal Judge for the Criminal Court of Record for the City of Oklahoma City and a candidate for District Court Judge in the Seventh Judicial District, Office 2. She seeks emergency relief against the Oklahoma State Election Board (Board) in the form of a writ of mandamus and prohibition. For the reasons set forth in this opinion, Petitioner's application for original jurisdiction and her petition for a writ of mandamus are granted.

¶ 2 Petitioner was appointed to the office of Municipal Judge on July 1, 1997 for a two year term. On July 8, 1998, while holding that office, she declared her candidacy for the District Court against incumbent James Blevins who had filed his candidacy on July 6th. Two other candidates, Larry Monard

and Betty Lawler, entered the race during the filing period which was open from Monday, July 6th through Wednesday, July 8th, 1998.

¶3 On July 10th, incumbent Blevins and candidate Monard filed petitions with the Board alleging Petitioner was not qualified to run for District Judge. Petitioner resigned the office of Municipal Judge effective at 5 o'clock p.m. the same day. The matter was heard on July 13th at which time the Board ruled that Petitioner was disqualified. Her name was stricken from the August 25, 1998, Primary Election ballot. Petitioner brought this action for emergency relief noting that the Oklahoma Statutes provide no appellate relief from decisions of the Board.

¶4 The Board based its decision on title 20, section 1404 of the Oklahoma Statutes which provides:

> B. In addition to the causes specified in Article VII–A, Section 1 of the Oklahoma Constitution, the acts and omissions enumerated below shall constitute grounds for the removal by the Court on the Judiciary of a judicial officer from his office, with or without disqualification to hold a judicial office the future:
>
> . . . .
>
> 5. A judicial officer becoming a candidate for any nonjudicial office or for another judicial office whose term is to commence before the expiration of his present term of office; provided that no judge holding a nonelective judgeship shall become a candidate in a race in which the incumbent seeks to retain an elective judicial office unless he first resign his appointive judgeship.

Petitioner now challenges the authority of the Board to enforce this provision and the Board's construction of the statute.

¶5 The power and authority of the Board were reviewed in *Brickell v. State Election Board*, 203 Okla. 362, 221 P.2d 785 (1950), which held:

> An election board has only such power and authority as is directly vested in it by the Legislature. The authority it may exercise and the duty it may be required to perform must appear in the Legislative

Act it purports to act under. It must stay within its delegated authority and may not be forced to exercise power not granted by the Legislature.

*Id.* 221 P.2d at 788. The specific statutory authority to remove a candidate from an election ballot is found at title 26, section 5–127. That section provides that "[i]f the election board determines that the contestee was not qualified to become a candidate for the office for which he filed a declaration of candidacy, it may order that his candidacy be stricken and that his name not be placed on the ballot." *See also* Okla. Stat. tit. 26, § 5–120 (1991) (reasons not appearing on face of petition contesting qualifications to become candidate are waived). Thus, the Board may only remove from the ballot the names of those who are not qualified by law for the office being sought.

¶6 Article 7, section 8(g) of the Oklahoma Constitution sets forth the following qualifications for District Judge:

> Each District Judge shall have had prior to election or appointment, a minimum of four years' experience as a licensed practicing attorney, or as a judge of a court of record, or both, within the State of Oklahoma; shall be a qualified elector of the respective district; and shall have such additional qualifications as may be prescribed by statute. Each Associate District Judge shall be an attorney licensed to practice in the State of Oklahoma and an elector in the County at the time of filing; and they shall have such additional qualifications as prescribed by statute. Both District Judges and Associate District Judges shall continue to be licensed attorneys while in office.

An additional statutory qualification for the office of District Judge is found at title 20, section 92i. It provides: "To file as a candidate for the office of district judge or associate district judge, one must have been a registered voter of the appropriate county for at least six (6) months prior to the first day of the filing period."

¶7 The Board urges that section 1404(B)(5) is another statutory qualification for District Judge. Petitioner argues that the provision is no more than another ground

for a judge's removal by the court on the Judiciary. The question is one of legislative intent.

¶ 8 "The legislative intent behind a statute is to be ascertained from the whole act in light of the general purpose and object." *TRW/Reda Pump v. Brewington*, 829 P.2d 15, 20 (Okla.1992). A plain and unambiguous statute will be "accorded the meaning expressed by the language used." *Id.*

¶ 9 The language used in section 1404 provides "[a]dditional grounds for removal of [a] judicial officer" in addition to those provided in article VII–A, section 1, of the Oklahoma Constitution. It explicitly provides that the statute is to be enforced by the Court on the Judiciary. No qualifications for candidacy appear in the text of the statute.

¶ 10 The Legislature could have created another qualification for judicial candidacy. However, the language of section 1404 and the penalty for violating the statute demonstrate the Legislature's intent to provide the Court on the Judiciary with an additional ground for a judge's removal. The statute is completely silent as to qualifications for filing as a candidate for public office.

¶ 11 The Board's construction of section 1404 would render the enforcement provision in the statute meaningless. The Court on the Judiciary would never remove a judicial officer for simultaneously holding appointive office and challenging an incumbent District Judge because the Board would have previously disallowed the candidacy. "This Court will not assume that the Legislature has done a vain and useless act. *Hill v. Board of Education*, 944 P.2d 930, 933 (Okla.1997).

¶ 12 Section 1404 does not apply to the instant controversy. Because this is so, this Court need not address the Board's construction of that statute. The Board is hereby commanded to place Petitioners name on the ballot for District Judge, Seventh Judicial District, Office 2.

ORIGINAL JURISDICTION ASSUMED; WRIT OF MANDAMUS ISSUED TO RESPONDENT STATE ELECTION BOARD.

¶ 13 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE and WATT, JJ., concur.

OPALA, Justice, concurring in result.

¶ 14 Assuming that the subsection invoked against this petitioner, 20 O.S.Supp. 1997 § 1404(B)5, imposes a disqualification upon candidates for a judicial office rather than constituting *merely* a ground for breach-of-discipline proceedings before the Court on the Judiciary, the critical provision that addresses itself *solely* to nonelected judges is to be declared inapplicable to an appointed municipal judge whose race for office, unlike that by a special judge, does not adversely affect professional harmony and discipline among courthouse judges. Maintaining harmony and discipline in the courthouse is the *only* intended goal of the invoked provision in § 1404(B)5 and the *sole* concern that prompted the legislature to enact the law's protection. The judiciary bears constitutional responsibility to guard against overbroad application of statutory restrictions upon a qualified individual's freedom to seek a public office.

¶ 15 SIMMS and ALMA WILSON, JJ., absent.