Dear Commissioner Fields:
This office has received your letter requesting an official Attorney General Opinion in which you ask the following question:
 Does the Commissioner of Labor have jurisdiction over the inspection of water rides at amusement parks?
The Commissioner of Labor has statutory jurisdiction to oversee "amusement rides." 40 O.S. 2001, § 460 [40-460]. However, statutory jurisdiction is also given to the Commissioner of Health to supervise "the sanitation, healthfulness, safety and design of public bathing places." 63 O.S. Supp.2006, § 1-1014. The Board of Health has interpreted this to include "water recreation attractions." OAC 310:320-1-2 (1991).
Your question is whether "water rides" fall within the definition of an "amusement ride" or a "water recreation attraction." You ask, in essence, whether the Commissioner of Health has jurisdiction over "water rides" which are connected to a public bathing place as part of its oversight of "public bathing places," or whether the Commissioner of Labor has jurisdiction as part of its authority over "amusement rides."[1]
The specific term "water ride" is not used in the statutes or regulations for either the Department of Health or the Department of Labor. However, a look at the ordinary dictionary definitions of "water" and "ride" provide insight into the meaning of "water ride." "Water" is defined to include "a means of transport on water or travel or transportation by such." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2581 (3d ed. 1993) [hereinafter WEBSTER'S]. The definition of "ride" includes "any of various mechanical devices at an amusement park or carnival for riding on." Id. at 1953. Thus, based on these definitions, a "water ride" would be defined as an amusement park device that uses water as the means of transportation.[2]
 I. "WATER RIDES" ARE INCLUDED IN THE DEFINITION OF "AMUSEMENT RIDES."
Title 40 contains the statutes related to labor and includes the regulation of "amusement rides" in Chapter 12. The Commissioner of Labor is responsible for the "safe installation, repair, maintenance, use, operation and inspection of all amusement rides necessary for the protection of the general public using amusement rides." 40 O.S. 2001, § 460[40-460]. Thus, a major focus of the Department of Labor is on the structural integrity of the ride. This is supported by the regulations, which include extensive specifications on inspections and the structural integrity of the rides. OAC 380:55-9-1 (1991), 55-9-2 (2002), 55-9-3 (2002).[3]
An "amusement ride" is defined in Section 461(1) of Title 40 as "a device or combination of devices or elements that carry, convey, or direct a person or persons over or through a fixed or restricted course or within a defined area for the primary purpose of amusement or entertainment." Under Section 462 amusement rides are subject to inspection by the Commissioner of Labor.
The definition of an "amusement ride" basically has three components. The first is that it is a "device or combination of devices or elements." Id. § 461(1). Second, the device must "carry, convey, or direct a person or persons over or through a fixed or restricted course or within a defined area." Id. Third, the ride must be for the "primary purpose of amusement or entertainment." Id. This definition of an "amusement ride" was amended in 2003. See 2003 Okla. Sess. Laws ch. 102, § 1(1). Prior to this amendment, the statute defined "amusement rides" as "a mechanical device which carries or conveys passengers along, around or over a fixed or restricted route or course for the purpose of giving its passengers amusement." 1982 Okla. Sess. Laws ch. 145, § 2(1).
"The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in the statute." Jackson v. Indep. Sch. Dist. No. 16,648 P.2d 26, 29 (Okla. 1982). When a term is not specifically defined, then the common meaning of the term is used. 25 O.S. 2001, § 1[25-1
]; see Humphries v. Lewis, 67 P.3d 333,335 (Okla. 2003) ("Where the language of a statute is clear and unambiguous, the language will be given its plain meaning."). While this rule of construction refers to a statute, "[t]he same rules of construction apply to administrative rules and regulations as to statutes." Dolese Bros. Co. v. State ex rel. Okla. TaxComm'n, 64 P.3d 1093, 1098 (Okla. 2003).
The first component of the definition of an amusement ride is a "device or combination of devices or elements." 40 O.S. Supp.2006, § 461(1). These terms are not otherwise defined within the statute. Thus, a look to the common dictionary meanings is appropriate. A device is defined as "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." WEBSTER'S at 618. An element is defined as "one of the constituent parts, principles, materials, or traits of anything." Id. at 734. The 2003 amendment deleted the word "mechanical" from the definition of an amusement ride.See 2003 Okla. Sess. Laws ch. 102, § 1(1). Thus, it seems that the Legislature intended to broaden the definition of an amusement ride to include all types of "devices" both mechanical and those powered by other means, such as water; otherwise, this change would serve no purpose. "This court will not assume that the Legislature has done a vain and useless act. Rather it must interpret legislation so as to give effect to every word and sentence." Hill v. Bd. of Educ., 944 P.2d 930,933 (Okla. 1997).
The second part of the definition states that the device must "carry, convey, or direct a person or persons over or through a fixed or restricted course or within a defined area." 40 O.S. Supp.2006, § 461(1). Again, these terms are not otherwise defined, so the common meaning of the words indicates the legislative intent. "Carry" means "contain and direct the course of." WEBSTER'S at 343. "Convey" means "to bear from one place to another." Id. at 499. The 2003 amendment (2003 Okla. Sess. Laws ch. 102, § 1(1)) added to these two terms the word "direct," which means "to dispatch, aim, or guide usu[ally] along a fixed path." WEBSTER'S at 640. Prior to the 2003 amendment, this part of the definition referred only to passengers, as opposed to persons.See 1982 Okla. Sess. Laws ch. 145, § 2(1). A "passenger" is "one who is carried in a private conveyance . . . for compensation or expected benefit to the owner," as opposed to a "person" who is "an individual human being." WEBSTER'S at 1650, 1686. The addition of the word "direct" and the change of language from "passenger" to "person" again indicates a legislative intent to broaden the definition of "amusement ride."
The third component of the definition of an "amusement ride" requires that the "primary purpose" of the device be for "amusement or entertainment." 40 O.S. Supp.2006, § 461(1). Webster's uses "amusement" and "entertainment" as synonyms of each other, defining both words as some kind of pleasurable diversion. WEBSTER'S at 74, 757.
The terms used within this definition, especially in light of the 2003 amendments, signal a legislative intent that an amusement ride is more than just a motorized or mechanical passenger carrier, but includes any type of device, no matter how propelled, which moves an individual from one point to another along a fixed route for the enjoyment of that person. A water ride, as defined above, generally fits within the definition of an "amusement ride," as it is a piece of equipment that serves a special function that directs or transports a person over a fixed course for some kind of pleasurable diversion. Thus, a water ride fitting this description would come under the jurisdiction of the Commissioner of Labor. However, whether a specific "water ride" would fall under the definition of an "amusement ride" is a question of fact, and outside the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 II. "WATER RIDES" ALSO FALL UNDER THE DEFINITION OF "WATER RECREATION ATTRACTIONS."
The Commissioner of Health is responsible for the "supervision of the sanitation, healthfulness, safety and design of public bathing places." 63 O.S. Supp.2006, § 1-1014 (emphasis added). A "public bathing place" includes:
 [A]ll entirely artificially constructed wading pools, swimming pools, bathhouses used collectively by a number of persons for wading, swimming, recreative, or therapeutic bathing, together with all sanitary facilities, bathing suits, buildings, equipment, and appurtenances pertaining to such bathing places[.]
63 O.S. 2001, § 1-1013[63-1-1013] (emphasis added). The Health Department, through its regulations, has defined a "public swimming pool or public pool" to include a "water recreation attraction." OAC 310:315-1-2 (1991). These regulations go on to define a "water recreation attraction" as:
 [A] public bathing or swimming facility with design and operational features that provide patrons recreational activity which is different from that associated with a conventional swimming pool and purposefully involves total or partial immersion in the water. Water recreation attractions include but are not limited to water slides, water amusement lagoons, and wave pools.
Id. (emphasis added). "Water recreation attractions" are not otherwise defined in the Department of Health regulations or statutes, except for providing examples of specific types of "water recreation attractions," which include "Water slides," "Water amusement lagoons," and "Wave pools and tube rides." OAC 310:315-7-12(b), (c) (1991).[4]
 A "recreational water slide" is defined as consisting of "one (1) ormore flumes, plunge pool, a pump reservoir, filtration, disinfection,and chemical treatment facilities." OAC 310:315-7-12(b)(1). Theregulations also provide detailed requirements for a water slide plungepool, including minimum water depth and dimensions of the pool, as wellas the types of drains, slope, decks, pumps, bathhouse facilities,chemicals, and filtration equipment, but do not otherwise discussrequirements for the structural integrity of water slides. OAC310:315-7-12(b)(2). The regulations provide even more limited structuralspecifications for "water amusement lagoons" and "wave pools," withregulations for both stating that they should be "constructed ofconcrete or other impervious materials with a smooth slip-resistantfinish. These [lagoons/pools] shall be of such shape and design as to beoperated and maintained in a safe and sanitary manner." OAC310:315-7-12(c).
Therefore, many of the same type of "water rides" that would fall under the definition of "amusement rides" also fit under the definition of "water recreation attractions," as they involve a recreational activity different from that of a pool and involve some type of purposeful immersion. Whether a specific "water recreation attraction" is a "water ride" is a question of fact and outside the scope of this Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
In spite of this authority over "water recreation attractions," the Department of Health regulations specifically exclude the review of structural design of public bathing places, stating that "[t]he review of plans and specifications by the Water Facilities Engineering Servicedoes not include structural design or structural stability of any section or part of a public bathing place. Certification of adequacy is the responsibility of the design engineer." OAC 310:315-3-1(c) (1991) (emphasis added). Thus, while the Department of Health has statutory jurisdiction to supervise the safety and design of "public bathing places," the statute and the regulations emphasize "sanitary conditions" of the water ride area, as opposed to the structural safety of water rides. By relying on the design engineer to attest to the adequacy of the structural design, the Department of Health has chosen to focus its inspection efforts on health and sanitation issues as opposed to structural stability and design.
 III. THE COMMISSIONER OF LABOR AND THE COMMISSIONER OF HEALTH HAVE CONCURRENT AUTHORITY OVER WATER RIDES.
The statutory language of 63 O.S. 2001, § 1-1013[63-1-1013], which gives the Commissioner of Health jurisdiction over "public bathing facilities," was first enacted in 1963.[5]See 1963 Okla. Sess. Laws ch. 325, art. 10(D), § 1013. The language defining "amusement rides" and giving the Commissioner of Labor jurisdiction over these rides was first enacted in 1982 (see 1982 Okla. Sess. Laws ch.145, § 2) and amended in 2003 to broaden the definition of an "amusement ride" to what it is today. See 2003 Okla. Sess. Laws ch. 102, § 1. "Generally, when statutes on the same subject matter are conflicting, they must be construed to give force and effect to each, since it will not be presumed that the legislature in the enactment of a subsequent statute intended to repeal an earlier statute, unless it has done so in express terms." Beavin v.State ex rel. Dep't of Pub. Safety, 662 P.2d 299, 302 (Okla. 1983). Thus, it cannot be implied that because the "amusement ride" statute was enacted after the "public bathing facilities" statute, the Legislature intended that water rides should be under the sole jurisdiction of the Department of Labor. Therefore, since both "amusement rides" and "water recreation attractions" can encompass the definition of "water rides," the concern now is whether the Commissioner of Labor and the Commissioner of Health can have concurrent authority over these "water rides."
The New Jersey Supreme Court addressed this issue of concurrent authority, stating:
 In the modern administrative state, regulation is frequently complementary, overlapping, and comprehensive. Absent a nearly irreconcilable conflict, to allow one remedial statute to preempt another or to co-opt a broad field of regulatory concern, simply because the two statutes regulate the same activity, would defeat the purposes giving rise to the need for regulation. It is not readily to be inferred that the Legislature, by enacting multiple remedial statutes designed to augment protection, actually intended that parties be subject only to one source of regulation.
Lemelledo v. Beneficial Mgmt. Corp., 696 A.2d 546, 554 (N.J. 1997).
The Oklahoma Supreme Court has supported a similar finding. SeeMesser-Bowers Co. v. State ex rel. Okla. Water Res. Bd., 8 P.3d 877
(Okla. 2000). In this case, the court pointed out that "[t]he primary goal of statutory construction is to determine legislative intent. That intent is to be ascertained from the statute in light of its general purpose and object. It is presumed that the Legislature has expressed its intent in a statute and that it intended what is so expressed."Id. at 882. In Messer-Bowers, which concerned the jurisdiction of the Department of Agriculture and the Water Board in granting groundwater permits to a livestock facility, the court said, in essence, that the Acts in question did not provide exclusive jurisdiction to either agency, and in fact, supported concurrent authority. Id.
Here, the Commissioner of Health has broad jurisdictional authority over public bathing places and all related equipment which fall under the definition of "water recreation attractions," including some water rides. However, thus far the Board of Health has limited its inspection focus to the sanitation and health of these public bathing facilities, as opposed to the structural integrity of water rides that may be attached to such a facility.
In contrast, the Department of Labor has focused its efforts concerning amusement rides toward the inspection of the structural integrity of these rides. The Commissioner of Labor has authority over the safe installation, repair, and operation of "amusement rides." While this authority does not include the water sanitation aspects of water rides, it does include the structural integrity of rides which fall under the definition of "amusement rides." Thus, some water rides, while falling under the broad statutory jurisdiction of the Commissioner of Health over "public bathing places," would also fall under the definition of an "amusement ride," and, therefore, also come under the authority of the Department of Labor to inspect the structural integrity of these rides. However, neither department appears to have sole authority over these types of rides or attractions, as the definitions in both statutes can be construed to include "water rides."
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. A "water ride" falls under the definition of "amusement ride," as defined in 40 O.S. Supp.2006, § 461(1), giving the Commissioner of Labor jurisdiction to inspect these rides.
 2. The definition of "public bathing facilities" in 63 O.S. 2001, § 1-1013[63-1-1013] gives the Commissioner of Health jurisdiction over "water recreation attractions," which would include "water rides" that "purposefully involve total or partial immersion in the water." OAC 310:315-1-2 (1991).
 3. While the Department of Health has focused its inspection efforts on the sanitation and healthfulness aspects of "water rides" rather than the structural integrity of the rides (OAC 310:315-3-1(c)), both the Commissioner of Health and the Commissioner of Labor have authority over the inspections of "water rides" under their statutes. See 63 O.S. 2001, § 1-1013[63-1-1013]; 40 O.S. Supp.2006, § 461(1).
W. A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
PATRICIA A. PODOLEC ASSISTANT ATTORNEY GENERAL
[1] The Opinion was sought as a result of the collapse of a section of a "water roller coaster" at a Tulsa water park on June 8, 2007.See Clifton Adcock, Part of Big Splash ride falls, Tulsa World, June 9, 2007, at A17. "Master Blaster," the ride that collapsed, is described on the manufacturer's website as a ride which uses "patented water injection technology to boost riders, roller coaster style, up steep inclines and down and round twists and turns." http://www.nbgs.co.uk/pages/products/blaster (last visited Aug.19, 2007).
[2] An internet search also provided a similar definition of "water rides" as being "amusement rides that are set over water."Wikipedia, http://en.wikipedia.org/wiki/Water_Rides (last visited Aug. 13, 2007) (This source is not generally recognized as authoritative, but provides a useful definition of "water rides" and related examples.). The Wikipedia definition for "water rides" also provided links to several examples of these rides:
 Log flumes . . . [are] an amusement ride consisting of a water flume and artificial hollow logs. Passengers sit in the logs, which are propelled along the flume by the flow of water. The ride usually culminates with a rapid descent and splashdown into a body of water.
Id., http://en.wikipedia.org/wiki/Log_flume_%28 attraction%29 (last visited Aug. 13, 2007) (emphasis added);
 A water slide is a type of slide or tube designed for warm-weather or indoor recreational use, typically with water pumped to its top and allowed to flow down its surface, although some may simply be wet. A person is able to sit directly on the slide, or on a raft or tube designed to be used with the slide, and slide to the bottom via gravity. . . . Water slides typically run into a swimming pool (often called a plunge pool) at the end.
Id., http://en.wikipedia.org/wiki/Water_Slide (last visited Aug. 13, 2007) (emphasis added);
 River rafting ride . . . is an amusement ride that simulates whitewater rafting.
Id., http://en.wikipedia.org/wiki/River_Rafting_Ride (last visited Aug. 13, 2007) (emphasis added).
[3] The inspection requirements include inspection of blocking, carriers, safety pins, ride support, speed and overloading, passenger restrictions, brakes, clutches, roll backs, safety trips, guarding, modifications/alternations, removable parts, ride clearance and fencing, and wire rope. OAC 380:55-9-3 (2002).
[4] Several other states have similar definitions of a "water recreation attraction" and, as in Oklahoma, also provide examples of these attractions as part of the definition. For instance, Oregon regulations note that the definition of a "Water recreation attraction" includes "waterslide plunge pools, lazy or slow rivers, tubing pools, and wave pools." OR. ADMIN. R. 333-060-0015(25)(k) (2007). Florida regulations include as examples "water slides, river rides, water course rides, water activity pools, interactive water features, and wave pools." FLA. ADMIN. CODE ANN. r. 64E-9.002(31) (2007). North Carolina regulations include "(i) water slide plunge pools and run out lanes; (ii) wave pools; (iii) rapid rides; [and] (iv) lazy rivers" as examples of "water recreation attractions." N.C. ADMIN. CODE tit. 15A, r. 18A.2508(2)(d) (July 2007).
[5] This statute was amended in 1995 by adding the last sentence, which does not affect the analysis in this Opinion. See 1995 Okla. Sess. Laws ch. 54, § 1.